UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NESLY LOUTE,

    Petitioner,

v.       Case No: 2:20-cv-124-SPC-MRM
    Case No: 2-15-cr-99-SPC-MRM

UNITED STATES OF
AMERICA,

    Respondent.
_____/

**OPINION AND ORDER**[1]

Before the Court are Petitioner Nesly Loute's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1), the Government's response (Doc. 9), and Loute's reply (Doc. 12).[2]

**BACKGROUND**

A Grand Jury charged Loute by Superseding Indictment of three counts of conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349. (Cr-Doc. 133). Loute was represented at trial by attorney James W. Chandler. After the Government rested, the Court granted Loute's motion to dismiss Counts 2

---

[1] Disclaimer: Documents hyperlinked to CM/Cr-Doc. are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] The Court cites to the civil docket as (Doc. _) and to the criminal docket as (Cr-Doc. _).

and 3 as multiplicitous. (Cr-Doc. 288 at 182). The jury found Loute guilty of Count 1. (Cr-Doc. 187). The Court sentenced Loute to a 168-month term of imprisonment, 36 months of supervised release, and payment of $2,146,147.23 in restitution. (Cr-Doc. 285). Loute appealed the conviction and sentence, and the Eleventh Circuit affirmed. *United States v. Loute*, 758 F. App'x 814 (11th Cir. 2018). This § 2255 Motion followed. Loute argues he was denied the effective assistance of counsel because Chandler failed to (1) contact, interview, subpoena, and call potentially exculpatory witnesses and (2) use evidence from an allegedly related state investigation. (Doc. 1; Doc. 2).

At trial, the Government presented evidence that Loute orchestrated a scheme to fraudulently collect insurance payments through chiropractic clinics. Loute arranged for physicians to be straw owners of the clinics to avoid certain Florida licensing requirements. Loute recruited acquaintances to manage the day-to-day operations of the clinics, and he hired chiropractors to work in the clinics. Loute and his co-conspirators paid people to stage car accidents and receive unneeded treatment at the clinics. The clinics then used the United States mail to submit fraudulent claims to insurance providers and collect payment on those claims.

In 2013, the FBI launched an investigation into suspicious chiropractic clinics in Florida. (Cr-Doc. 276 at 80). As part of the investigation, Dr. John Webb—a FBI informant—contacted Loute. (ECF. 279 at 24). Webb had

previously met with Loute and co-defendants Wisler Cyrius and Anouce Toussaint about setting up chiropractic clinics. (Cr-Doc. 279 at 24-25). Loute told Webb that Cyrius and Toussaint were ready to open a clinic and would pay Webb $2,000 plus monthly fees for being the straw owner. (Cr-Doc. 279 at 42-43, 46-47, 63). In return, Webb would give Loute a portion of the payments Webb received. (Cr-Doc. 279 at 43).

Loute opened Tamiami Pain and Rehab, listing Webb as the principal of the business. (Cr-Doc. 280 at 25-26). And he set up a bank account with Webb and Toussaint and had Webb pre-sign checks for the account. (Cr-Doc. 279 at 61-66). Loute then hired Dr. David Adamson, a chiropractor, to treat patients at the clinic. (Cr-Doc. 288 at 8). After Tamiami drew the attention of insurance investigators, Cyrius and Toussaint—at Loute's instruction—closed Tamiami and reopened it nearby as First Choice Pain and Rehab. (Cr-Doc. 279 at 154-55).

Toussaint pled guilty and testified at Loute's trial. He said that Loute recruited him into the scheme and introduced him to Webb. (Cr-Doc. 279 at 134-36). Loute told Toussaint to pay patients to receive treatment at the clinic, and Loute directed patients to the clinic and instructed Toussaint to pay them. (Cr-Doc. 279 at 145-49). The patients generally committed to 30-35 treatments and were paid $1,000 after 15 visits and $1,000 after the final visit. (Cr-Doc.

3

279 at 149). Toussaint also described staging car accidents at Loute's direction to generate patients. (Cr-Doc. 279 at 157-62).

Loute operated a similar scheme at a nearby clinic called Parkway Medical and Rehab. Co-defendant Garry Joseph worked with Loute at Parkway and gave testimony that tracked Toussaint's. (Cr-Doc. 278 at 76-132). Lherisson Domond, an obstetrician and gynecologist in his eighties, was initially the straw owner of Parkway. (Cr-Doc. 276 at 172-73; Cr-Doc. 278 at 80-83). Loute hired Dr. Phillip Cobb—a confidential informant for the state of Florida—to treat patients at Parkway. (Cr-Doc. 277 at 7-9). Loute, Joseph, and co-conspirator Sijames Melus eventually offered Cobb 5% of the clinic's collections to become the straw owner. (Cr-Doc. 277 at 32-33). After consulting his law enforcement contacts, Cobb accepted, and Parkway was rebranded as Collier Chiropractic Clinic. (Cr-Doc. 277 at 32-34).

Loute testified at trial. He denied any illegal conduct and claimed he was acting under the direction of Webb and Domond. (Cr-Doc. 288 at 193, 221, 236). And he attempted to explain away some of the incriminating recordings made by informants and undercover agents. (*See, e.g.,* Cr-Doc. 288 at 208-210).

## LEGAL STANDARD

### A. 28 U.S.C. § 2255

A prisoner in federal custody may move for his sentence to be vacated, set aside, or corrected on four grounds: (1) the imposed sentence violates the

Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence was over the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). A § 2255 motion "may not be a surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (stating § 2255 relief is "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice" (internal quotations omitted)). The petitioner bears the burden of proof on a § 2255 motion. *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015) (citation omitted).

### B. Ineffective Assistance of Counsel

Criminal defendants have a Sixth Amendment right to reasonably effective assistance of counsel. In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person may have relief under the Sixth Amendment. 466 U.S. 668, 687-88 (1984). A petitioner must establish: (1) counsel's performance was deficient and fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Id.* Failure to show either *Strickland* prong is fatal. See *Kokal v. Sec'y, Dep't of Corr.*, 623 F.3d 1331, 1344 (11th Cir.

2010) ("a court need not address both *Strickland* prongs if the petitioner fails to establish either of them").

When considering the first prong, "courts must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Sealey v. Warden*, 954 F.3d 1338, 1354 (11th Cir. 2020) (quoting *Strickland*, 466 U.S. at 689). When considering counsel's duty to investigate, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

The second prong requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 1355 (quoting *Strickand*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome, which is a lesser showing than a preponderance of the evidence." *Id.* (cleaned up). "At the same time, "it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding' because 'virtually every act or omission of counsel would meet that test." *Id* (quoting *Strickland*, 466 U.S. at 693).

## DISCUSSION

### A. Failure to Call Witnesses

6

Loute faults his trial counsel for failing to contact, interview, subpoena, and offer testimony from six potential witnesses. Loute failed to satisfy either *Strickland* prong as to any of the proposed witnesses.

1. Wisler Cyrius

Cyrius was a co-defendant and the person who managed the day-to-day operations of Tamiami and First Choice with Tousssaint. Loute claims Cyrius could have testified that Loute was unaware Cyrius was staging auto accidents. But Cyrius pled guilty to conspiring with Loute to commit mail fraud. (Cr-Doc. 130). Testimony that Loute was unaware of certain fake accidents would not have been exculpatory, and any benefit would have been far outweighed by the admissions Cyrius made in his plea agreement. (*See* Cr-Doc. at 19-20).

2. Dr. Lherisson Domond

Dr. Domond was the initial straw owner of Parkway. Loute does not identify any potentially exculpatory testimony Domond might have given. What is more, Domond had been declared incompetent, and the Court made clear that he would not have been allowed to testify. (Doc. Cr-Doc. 288 at 142-44).

3. Ashley Jean and 4. Nick Dorset

Jean and Dorset worked at the clinics as a receptionist and a massage therapist, respectively. Loute claims they would have testified that Loute was

7

not their boss. But that is consistent with the Government's case. Loute recruited accomplices to run the day-to-day operations of each clinic. And he never used his own name when registering up the business entities. The proposed testimony from Jean and Dorset would not have been exculpatory.

5. <u>Detective Robert Nichols</u> and 6. <u>Lieutenant Glen Clasen</u>

Nichols is a detective with the State of Florida. Loute contends his trial counsel could have questioned Nichols about an earlier state case styled *Florida v. Vilbon*, Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida, Case No. 12-2271CF-JRS-EL. Clasen worked with the Division of Insurance Fraud, participated in the investigation of Loute and his co-defendants, and sat at the Government's table during trial. Loute claims Clasen could have "emphasized" that the *Vilbon* investigation disproved Cobb's alleged role as straw owner of Collier Chiropractic. ([Doc. 2 at 12](Doc. 2 at 12)). For the reasons stated in the next section, the *Vilbon* case has no relevance here. Thus, Loute has not identified any relevant testimony Nichols and Clasen could have given in this case.

**B. Failure to Investigate Prior State Investigation**

Loute next faults his trial counsel for failing to mine the *Vilbon* case for impeachment evidence. Specifically, he claims evidence from the *Vilbon* case proved that Wilhem Vilbon was the true owner of Collier Chiropractic Clinic, which could have been used to impeach testimony from Dr. Cobb and State

8

Farm Insurance investigator Judy Riley. But the *Vilbon* case has no apparent connection to this one. As evidenced by the case number, the *Vilbon* investigation culminated in criminal charges in 2012, about two years before Loute and his co-conspirators set up a clinic called Collier Chiropractic Clinic. These were clearly different clinics. The only apparent connection is that the State of Florida listed Cobb and Riley as potential witnesses. (Doc. 3-1 at 15, 18). That is not surprising given that Cobb works as a confidential informant and that Riley is an insurance investigator. The *Vilbon* case is irrelevant. Chandler did not err by ignoring it, and Loute was not prejudiced by its absence from his trial.

## EVIDENTIARY HEARING

A court must hold an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "If the petitioner alleges facts, that if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017) (quoting *Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002)). A petitioner need only allege, not prove, facts that would entitle him to relief. *Id.* However, the alleged facts must be reasonably specific and non-conclusory. *Aron*, 291 F.3d at 715 n.6; *see also Allen v. Sec'y, Fla. Dep't or Corr.*, 611 F.3d 740, 745 (11th Cir. 2010), *cert denied*, 563 U.S. 976 (2011).

9

Further, if the allegations are "affirmatively contradicted by the record" and "patently frivolous," the court need not hold an evidentiary hearing. *Id.*

The Court finds an evidentiary hearing unwarranted here. Loute has not alleged facts that, if proven, would entitle him to relief.

### CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell,* 537 U.S. 322, 335–36 (2003) (citations omitted). Loute has not made the requisite showing here and may not have a certificate of appealability on any ground of his Motion.

Accordingly, it is now

**ORDERED:**

Petitioner Nesly Loute's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 1) is **DENIED**.

The Clerk shall enter judgment, terminate all motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 17, 2021.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1

Copies: All Parties of Record